# No. 15-2557

## UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

---

Penshurst Trading Inc., DBA Juliska,
Plaintiff-Counter-Defendant - Appellee,
v.
Zodax L.P.,
Defendant – Counter-Claimant – Appellant.

---

Opening Brief of Zodax L.P.,
Defendant – Counter-Claimant – Appellant

---

On Appeal from the United States District Court
for the Southern District of New York
No. 14-cv-2710-RJS (OWO)
Hon. Richard J. Sullivan, United States District Judge

---

November 23, 2015

/s/ Michael Harris
Michael Harris
mharris@socalip.com
Steven C. Sereboff
ssereboff@socalip.com
M. Kala Sarvaiya
ksarvaiya@socalip.com
SOCAL IP LAW GROUP LLP
310 N. Westlake Blvd., Suite 120
Westlake Village, CA 91362-3788
Phone: (805) 230-1350 • Fax: (805) 230-1355
Attorneys for Defendant – Counter-Claimant –
Appellant, Zodax L.P.

UNITED STATES COURT OF APPEALS FOR THE

SECOND CIRCUIT

Penshurst Trading Inc., DBA Juliska,

     Defendant – Counter-Claimant – Appellant,

        v.                                       Docket No.: 15-2557

Zodax L.P.,

     Defendant – Counter-Claimant – Appellant.

**TABLE OF CONTENTS**

A.    Corporate Disclosure Statement..........................................................................1

B.    Jurisdictional Statement ....................................................................................1

C.    Issues Presented.................................................................................................2

D.    Statement of the Case........................................................................................3

       1.   The Pleadings ........................................................................................5

       2.   Judge Who Rendered the Decision .........................................................5

       3.   Disposition below ..................................................................................5

E.    Statement of the Facts .......................................................................................5

       1.   Plaintiff's trademark, trade dress and copyright allegations.....................6

       2.   Before plaintiff sued, defendant explained why all

           infringement claims lacked legal and factual support...............................6

3. Defendant never used JULISKA or any similar word as a trademark. ................................................................7

4. Plaintiff had no evidence that its assembly of design elements arranged differently on different glassware served as protectable trade dress. ...........................................8

5. The parties settlement discussions. ........................................10

6. Plaintiff sued despite knowing its trademark and trade dress claims lacked any merit. ..............................................11

7. After asking to file a preliminary injunction motion, plaintiff did nothing to pursue its claims. ...............................15

8. In two deft procedural maneuvers, just before defendant could move for summary judgment, plaintiff amended its complaint and later dismissed its complaint. ............................15

9. Based on what defendant explained to plaintiff, continued pursuit of the lawsuit was bad faith. ..............................16

10. Plaintiff dismissed because it knew it could not prevail, not because the stakes were too small to continue. .......................17

F. Summary of the Argument ..............................................18

G.  Argument ....................................................................................... 19

    1.  Introduction ............................................................................. 19

    2.  The abuse of discretion standard applies to all issues on appeal, but a district court abuses its discretion when it bases its ruling on an error of law or a clearly erroneous finding of fact .......................... 20

    3.  The district court abused its discretion by relying on unsupported allegations in the complaint or in letters to the court to counter defendant's uncontroverted evidence. ........................... 21

    4.  The district court had the right to award defendant its reasonable attorney fees under the Lanham Act and Copyright Act claims. ................................................................................. 24

        a.  The district court abused its discretion by basing its decision against awarding fees on clearly erroneous fact finding and mistakes of law. .............................................. 24

        b.  An "exceptional case" standard applies to attorney fee awards under plaintiff's Lanham Act trademark and trade dress infringement claims .................................................. 25

c.  The Supreme Court's *Octane Fitness* case interpreting
    "exceptional case" to patent litigation applies to the Lanham
    Act claims. ..........................................................................25

d.  *Octane Fitness* eases the standard for awarding attorney
    fees such that a case is exceptional for plaintiff's subjective
    bad faith or for exceptionally meritless claims. .................................27

5.  Under the *Octane Fitness* or older standards, the district court
    abused its discretion through errors of law and clearly
    erroneous factual findings when it held defendant's prevailing
    on plaintiff's Lanham Act and Copyright Act claims warranted
    no attorney fee award. ............................................................29

a.  The district court abused its discretion when it held that
    plaintiff's trademark claim for relief had merit based only
    on one private comment using "Juliska-ish" to plaintiff's
    CEO. ..................................................................................29

b.  The district court abused its discretion when it ruled that
    plaintiff's trade dress claims were reasonable and not
    frivolous. ..............................................................................31

i.  No facts could support the necessary secondary meaning for plaintiff's product designs ...........................................32

ii.  The district court erred by considering irrelevant statements in the amended complaint as supporting secondary meaning. ........................................................36

iii. Plaintiff's glassware designs are too inconsistent and too complex to identify plaintiff as the source. ...................................40

iv.  Defendant's prominent display of its ZODAX trademark negates public confusion. ...............................................44

v.  The district court findings why plaintiff dismissed was clearly erroneous. .........................................................45

c.  Because plaintiff's copyright claim was predicated on an unsubstantiated allegation of copying, the district court abused its discretion in denying defenant attorneys' fees on the copyright claims. .........................................................46

6.  Plaintiff and its counsel had to know that its claims were baseless and brought in bad faith. ...........................................48

7.    Even if only the Lanham Act claims justify awarding attorney

fees, plaintiff's copyright claim is so intertwined with the other

claims that the fee award should apply to all defendant's

attorney fees...................................................................................49

8.    The district court improperly denied costs..............................................50

H.    Conclusion.................................................................................................51

I.    Certificate of Compliance With Type-Volume Limitation, Typeface

Requirements, and Type Style Requirements...................................................53

## TABLE OF AUTHORITIES

**Cases**

*Atlantis Silverworks v. 7th Sense*, No. 96 Civ. 4058, 1997 U.S. Dist. LEXIS

3158, 1997 WL 128403 (S.D.N.Y. Mar. 19, 1997)...........................................27

*Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033 (2d Cir.

1992) ...................................................................................................33

*Bryant v. Media Right Prods.*, 603 F.3d 135 (2d Cir. 2010) ........................... 35, 36

*Carter v. Inc. Vill. of Ocean Beach*, 759 F.3d 159 (2d Cir. 2014) .................. 19, 38

*Castle Rock Entm't v. Carol Publ'g Grp.*, 150 F.3d 132 (2d Cir. 1998)...............35

*Cliffs Notes, Inc. v. Bantam Doubleday Dell Publ'g Grp., Inc.*, 886 F.2d 490

(2d Cir. 1989)........................................................................................22

*Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 16 (2d Cir. 1991)...............27

*Colombrito v. Kelly,* 764 F.2d 122 (2d Cir. 1985)..................................................18

*Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693 (2d Cir. 1992)................10

*Contractual Obligation Prods., L.L.C. v. AMC Networks, Inc.*, 546

    F. Supp. 2d 120 (S.D.N.Y. 2008) .....................................................................21

*Cross Commerce Media, Inc. v. Collective, Inc.*, No. 13 Civ. 2754 (KBF),

    2014 U.S. Dist. LEXIS 177176, 2014 WL 7323419 (S.D.N.Y. Dec. 16,

    2014) .................................................................................................................20

*Diamond Supply Co. v. Prudential Paper Prods. Co.*, 589 F. Supp. 470

    (S.D.N.Y. 1984).................................................................................................21

*EFS Mktg., Inc. v. Russ Berrie & Co.*, 76 F.3d 487 (2d Cir. 1996)........................27

*Eltech Sys. Corp. v. PPG Indus., Inc.*, 903 F.2d 805 (Fed. Cir. 1990)...................21

*Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.,* 122 F.3d 1211

    (9th Cir. 1997)...................................................................................................37

*Ergotron, Inc. v. Hergo Ergonomic Support Sys.*, No. 94 Civ. 2732

    (SAS),1996 U.S. Dist. LEXIS 3822, 1996 WL 143903 (S.D.N.Y. Mar.

    26, 1996) ...........................................................................................................29

*Fabrication Enters. v. Hygenic Corp.*, 64 F.3d 53 (2d Cir. 1995) .........................27

*Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303 (3d Cir. 2014)........................20

*Feist Pub., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991) ................................17

*Ferguson v. NBC*, 584 F.2d 111 (5th Cir. 1978) ....................................................18

*Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) ......................................................35

*Gaste v. Kaiserman*, 863 F.2d 1061 (2d Cir. 1988)......................................... 18, 36

*Georgia-Pacific Consumer Prods. LP v. Von Drehle Corp.,* 781 F.3d 710

   (4th Cir. 2014)....................................................................................20

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ...........................................................37

*Highmark Inc. v. Allcare Health Mgmt. Sys.*, 134 S. Ct. 1744 (2014) ...................16

*Hoehling v. Universal City Studios, Inc.*, 618 F.2d 972 (2d Cir. 1980) .................37

*IMAF, S.P.A. v. J.C. Penney Co.*, 810 F. Supp. 96 (S.D.N.Y. 1992) .....................21

*Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844 (1982)...................................27

*Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27 (2d Cir.

   1995) ............................................................................................ 28, 30

*Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996 (2d Cir. 1995) ........................ 30, 32

*L. & J.G. Stickley, Inc. v. Canal Dover Furniture Co.*, 79 F.3d 258 (2d Cir.

   1996) ............................................................................................ 26, 27, 38

*Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373 (2d Cir.

   1997) ............................................................................................ 31, 32, 33

*Lauder v. First Unum Life Ins. Co.,* 284 F.3d 375 (2d Cir. 2002)..........................15

*Laureyssens v. Idea Grp., Inc.*, 964 F.2d 131 (2d Cir. 1992) .................................35

*Lipton v. Nature Co.*, 71 F.3d 464 (2d Cir. 1995) ..................................................17

*McDaniel v. Cnty. of Schenectady*, 595 F.3d 411 (2d Cir. 2010).................... 16, 23

*Mennen Co. v. Gillette Co.*, 565 F. Supp. 648 (S.D.N.Y. 1983), *aff'd without opinion*, 743 F.2d 1437 (2d Cir. 1984)............................................................21

*Mister Softee of Brooklyn, Inc. v. Boula Vending, Inc.*, No. 11-1055-cv, 484 F. App'x 623 2012 U.S. App. LEXIS 11834, 2012 WL 2095144 (2d Cir. 2012) ......................................................................................................18

*Moore v. County of Delaware*, 586 F.3d 219 (2d Cir. 2009) ..................................38

*Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest.*, 771 F.2d 521 (D.C. Cir. 1985) ......................................................................................................20

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014) 19, 20

*PaperCutter, Inc. v. Fay's Drug Co.*, 900 F.2d 558  (2d Cir. 1990).......................24

*Polaroid Corp. v. Polarad Elec. Corp.*, 287 F.2d 492 (2d Cir. 1961)....................34

*Rockland Exposition, Inc. v. All. of Auto. Serv. Providers*, 894 F. Supp. 2d 288 (S.D.N.Y. 2012)........................................................................................23

*Secalt S.A. v. Wuxi Shenxi Constr. Mach. Co.*, 668 F.3d 677 (9th Cir. 2012) ........24

*Sports Traveler v. Advance Magazine Pub'l*, 25 F. Supp. 2d 154 (S.D.N.Y. 1998) ......................................................................................................27

*Stormy Clime Ltd. v. ProGroup, Inc.*, 809 F.2d 971 (2d Cir. 1987).......................16

*Thomas & Betts Corp. v. Panduit Corp.*, 65 F.3d 654 (7th Cir. 1995) *later proceedings*, 138 F.3d 277 (7th Cir. 1998).......................................................25

ix

*Torah Soft Ltd. v. Drosnin*, No. 00 Civ. 5650 (JCF), 2001 U.S. Dist. LEXIS

    19217, 2001 WL 1506013 (S.D.N.Y. Nov. 27, 2001) ......................................36

*Traffix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23 (2001)............. 10, 24, 26

*Viola Sportswear v. Mimum*, 574 F. Supp. 619 (E.D.N.Y. 1983) ..........................21

*Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205 (2000)........................ passim

*Whitfield v. Scully*, 241 F.3d 264 (2d Cir. 2001) ......................................................38

*Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101 (2d Cir. 2001)................. 31, 32, 33

**Statutes**

15 U.S.C. § 1114 ...................................................................................................1

15 U.S.C. § 1117(a) ..................................................................................... passim

15 U.S.C. § 1121(a) ...............................................................................................1

15 U.S.C. § 1125(a) ...............................................................................................1

15 U.S.C. § 1125(a)(3)............................................................... 10, 24, 30, 37

17 U.S.C. § 101 ...................................................................................................17

17 U.S.C. § 505 ................................................................................... 15, 19, 39

28 U.S.C. § 1291 ...................................................................................................1

28 U.S.C. § 1294(1) ...............................................................................................1

28 U.S.C. § 1338 ...................................................................................................1

35 U.S.C. § 285 ................................................................................................ 16, 19

## Rules

FED. R. APP. P. 4(a)(1) ...................................................................................1

FED. R. APP. P. 4(a)(4)(A)(iii) ........................................................................1

FED. R. CIV. P. 54(d)(1) ................................................................................38

Individual Practices of Richard J. Sullivan ¶ 2A ..........................................1

S.D.N.Y Loc. Rule 7.1 ....................................................................................1

## Other Authorities

2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*

    § 15:52 (4th Ed. 2015) ...........................................................................25

5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*

    § 30:99 (4th Ed. 2015) ...........................................................................20

A.  **CORPORATE DISCLOSURE STATEMENT**

Defendant-appellant Zodax L.P. is a privately held California limited partnership. Coga Investments, Inc., a privately held California corporation, is the general partner of Zodax L.P. No publicly held corporation owns 10% or more of Zodax or of Coga's stock.

B.  **JURISDICTIONAL STATEMENT**

Plaintiff-appellee Penshurst Trading Inc., dba Juliska asserted trademark and trade dress infringement under the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a), Joint Appendix ("JA" 19-54), and an amended complaint, (JA 76-133), added copyright infringement under 17 U.S.C. § 501. The district court had subject matter jurisdiction under 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1338(a) and (b).

Plaintiff voluntarily dismissed all claims on February 11, 2015. JA 148-149. That was a "final decision." Defendant-appellant Zodax wrote the court on February 12, 2015, requesting permission under the court's rules to move to recover its attorney fees. JA 150-152. *See* S.D.N.Y Loc. Rule 7.1(d) and Individual Practices of Richard J. Sullivan ¶ 2A, requiring a letter to the court requesting permission to file motions. Sending the letter tolled the deadline for filing a notice of appeal. FED. R. APP. P. 4(a)(4)(A)(iii). At a March 17, 2015, conference regarding the attorney fees motion, the court instructed defendant to file its motion for attorney fees by March 31, 2015. (JA 156.) Zodax timely filed its motion on March 31, (JA

6-7), but the clerk issued a "filing error" notice and ordered Zodax to refile the motion. (JA 7.) Zodax complied the next day. (JA 7.) The district court denied Zodax's attorney fee motion on August 7, 2015, (JA 10-18), and Zodax timely filed its notice of appeal five days later on August 12, 2015. (JA 9.) FED. R. APP. P. 4(a)(1)

This Court has jurisdiction under 28 U.S.C. §§ 1291 and 1294(1).

C.   ISSUES PRESENTED

1.   Did the district court abuse its discretion by holding plaintiff's claims were not frivolous when plaintiff asserted (a) its line of glassware acquired secondary meaning, (b) defendant's single, spoken use of the word "Juliska-ish" to plaintiff's CEO infringed plaintiff's JULISKA trademark and (c) defendant copied plaintiff's copyrighted designs because the court accepted as true allegations in the complaint?

2.   Because plaintiff had the burden to prove its glassware designs were not functional, and the only evidence showed the designs to be mechanically and aesthetically functional, was the district court's failure to find the designs on plaintiff's glassware functional and not protectable trade dress an error of law leading to an abuse of discretion?

3.   Based on plaintiff's failures to have any facts and law supporting its Lanham Act and copyright claims and knowing it could not support them, did the

2

district court commit errors of law and fact by failing to find the case exceptional, frivolous and objectively unreasonable?

4. Even if the district court did not abuse its discretion in failing to award attorney fees under plaintiff's copyright claims, did the court abuse its discretion by failing to find the Lanham Act and copyright claim related so the award of attorney fees should apply to the entire suit?

## D.   STATEMENT OF THE CASE

After defendant Zodax prevailed because plaintiff Juliska's dismissed its claims, the district court abused its discretion in denying defendant attorneys' fees. The error arose from a misplaced focus on the minor factual and legal issues in plaintiff's case that had potential merit while overlooking one or more critical elements plaintiff could not prove.

Plaintiff Juliska asserted two frivolous infringement claims and later added a third. First, defendant never used JULISKA or anything confusingly similar as a trademark. Second, plaintiff's advertisements failed to identify its glassware design as a source indicator, and the same advertisements and admissions by its CEO touted functionality of plaintiff's glassware. Plaintiff had nothing to support the required secondary meaning to establish trade dress rights. With that knowledge, plaintiff had to know its trademark and trade dress infringement claims were meritless from the outset. Third, when plaintiff amended the complaint to add a copy-

3

right infringement claim, it knew defendant's manufacturer was overseas and plaintiff could not establish the manufacturer's access to plaintiff's designs. In summary:

| Plaintiff's Claim | District Court's Reasons for Claim's Merit | Plaintiff's Critical Missing Element |
|---|---|---|
| Trademark Infringement | JULISKA is a valid trademark | Defendant did not use JULISKA (or any confusingly similar word) as a trademark |
| Trade Dress Infringement | Defendant's products share similarities with some of plaintiff's products | Plaintiff's products are not protectable trade dress because they lack secondary meaning and are functional |
| Copyright Infringement | Plaintiff's copyrights are prima facie valid | Plaintiff had no evidence of copying and did not try to acquire evidence |

Plaintiff never should have sued, and defendant suffered from plaintiff's pursuit of frivolous claims. Fortunately, the Lanham and Copyright Acts attorney fee-shifting provisions should have made defendant whole and punished plaintiff for pursuing frivolous, objectively unreasonable claims. However, the district court mistakenly based its denial of attorney fees on what it saw as potential merit to unimportant elements of plaintiff's case instead of the lack of factual and legal support for critical elements of each asserted claim. Doing so abused its discretion.

### 1.    The Pleadings

The April 16, 2014, complaint (JA 19-54) charged defendant Zodax with trade dress infringement for using arguably similar designs to several of plaintiff's different glassware designs. The complaint also alleged that defendant infringed a registered trademark of a design logo that included the word "Juliska" within a stylized border. Juliska's November 10, 2014, amended complaint (JA 76-133) revised the trademark and trade dress claims and alleged that several of defendant's glasses infringed Juliska's copyrights. Zodax denied Juliska's material allegations.

### 2.    Judge Who Rendered the Decision

Hon. Richard J. Sullivan, District Judge, United States District Court, Southern District of New York.

### 3.    Disposition below

The court on August 7, 2015, denied defendant Zodax's motion for attorney fees (JA 10) following plaintiff's dismissal of the action (JA 148). The decision is reported at 2015 U.S. Dist. LEXIS 104029 and 2015 WL 4716344.

### E.    STATEMENT OF THE FACTS

When plaintiff Juliska sued, any reasonable party and its attorneys would appreciate the lack factual and legal support for at least one critical element for each claim. Before plaintiff sued, defense counsel explained to plaintiff with case law citations why plaintiff could not support its legal position. Even if plaintiff's

experienced intellectual property lawyers failed to appreciate the law, defendant's detailed explanation before the lawsuit took off fully informed plaintiff that it could not succeed.

1. **Plaintiff's trademark, trade dress and copyright allegations.**

Seeking to stop defendant's sales of several glasses and vases, plaintiff claimed defendant infringed trade dress in plaintiff's glassware. (JA 19.) Plaintiff also alleged defendant infringed plaintiff's JULISKA trademark. About six months later, plaintiff filed an amended complaint, (JA 76-133), which recast the trademark infringement claim and added a copyright infringement claim. (JA 90.)

2. **Before plaintiff sued, defendant explained why all infringement claims lacked legal and factual support.**

At a trade show in 2012, plaintiff's CEO, David Gooding told Edward Cohanim, defendant's vice-president, that several pieces of defendant's glassware infringed plaintiff's rights. (JA 47.) Mr. Cohanim asked Mr. Gooding to send plaintiff support to allow defendant to investigate. Plaintiff sent nothing. Therefore, defendant continued selling the items and displayed them at trade shows plaintiff also attended. (JA 161, ¶ 4.)

Mr. Gooding complained to Mr. Cohanim at another trade show about 18 months later. (JA 161, ¶ 6.) After the trade show, plaintiff's attorney wrote defendant and cited three registered trademarks and its alleged trade dress. (JA 162.) De-

fendant's counsel countered that the allegations were meritless, identified critical elements that plaintiff could not prove and explained why the law would not support plaintiff's allegations. (JA 170.)

**3.    Defendant never used JULISKA or any similar word as a trademark.**

Before plaintiff sued, it asserted two trademark registrations for the word JULISKA and a third for the logo to the right. (JA 48.)  Defendant responded that Zodax "does not use this mark, or anything similar, on any of its products." (JA 170.) Plaintiff did not back up its claim.

Plaintiff's original complaint claimed infringement of the logo, (JA 26-27), which is the subject of Registration No. 4,418,994. (JA 46.) The goods for that registration are "serving platters," not the glassware at issue here.

The amended complaint alleged, "When Mr. Gooding approached Zodax's vendor booth at the 2014 New York Gift Show, a Zodax representative asked Mr. Gooding: 'do you like our "Juliska-ish" products?'" (JA 88, ¶ 62.)[1] The amended complaint also alleged on information and belief, "Zodax uses or has used the word 'Juliska' when advertising, marketing, promoting, describing, offering for sale, and/or selling its products .…" (JA 88, ¶ 63.) Plaintiff could not have had true information and belief because defendant never used JULISKA or anything confusingly similar as a trademark. Defendant's advertising, signs, labels, containers and

---

[1] This allegation's truthfulness is unimportant here.

webpages were public and available to plaintiff and the public. Had infringements existed, plaintiff could find them easily, but it knew none existed. Plaintiff's trademark infringement allegation, therefore was in bad faith.

**4.    Plaintiff had no evidence that its assembly of design elements arranged differently on different glassware served as protectable trade dress.**

Plaintiff claimed a protectable trade dress in its "Berry and Thread" design. The original complaint defined the Berry and Thread design as "the unique combination of raised, circular clusters of rounded dots, creating berry shapes, and curved or scalloped double lines with diagonal, evenly spaced slashes between the lines, creating a thread or rope shape." (JA 19.) Plaintiff's amended complaint defined three trade dresses as follows:

> [A]pproximately three unique, distinctive patterns: a scalloped spiral thread design, with a "berry" shape appearing on or around the point of the scallop; (ii) curved lines of thread with "berries" on or adjacent to the thread; and (iii) a line of thread forming a circle, with a single "berry" in the center of the circle.

(JA 81, ¶ 24.) Photographs (size modified here) of six items from a Juliska catalog are below:




8


A
(JA 224-

E has two


C
(JA

229.) Goblet

threads par-





F

allel to the base. Glass A has one such thread. Glass F has a circular thread around

the berry. Glass C's thread spirals upward to a berry. Pitcher D has two inter-

twined, spiraling thread with a berry at one end of each spiral. Unlike the spiral of

glass C where the spiral rises more than halfway from the base, the spirals in pitch-

er D begin and end in the upper third of the pitcher. Some glasses (A, C and F)

have one berry; others (E) have two or more. Berries may be on or off the thread.

Compare A and E. The number of dots in the berries varies. The stem of wine glass

B has a spiral thread extending its entire length, but the stem on glass E has no

thread.

Plaintiff had to know consumers looking at its different products only could

conclude that "threads" and "berries" decorate the glasses instead of identifying

plaintiff as the source.

Defendant also reminded plaintiff of the stringent secondary meaning re-

quirement for trade dress, that "consumers *link* the trade dress with the brand." (JA

165.) Especially after *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 211

(2000) (plaintiff must prove "the primary significance" of the product's configura-

tion "identif[ies] the source of the product"), plaintiff needed at least some evi-

9

dence linking the products' design to an identification of plaintiff as the source. (JA 167.) In response, plaintiff merely argued that other competitors had capitulated to plaintiff. (JA 55.)

Plaintiff never explained why others capitulated. If plaintiff wanted to rely on capitulation, it needed evidence of the companies' reasons. Most likely, challenging plaintiff would cost more than any potential profit.

Plaintiff also ignored defense counsel's reminder of plaintiff's burden to prove any trade dress was not functional. (JA 55.)

### 5. The parties settlement discussions.

Despite defendant knowing it did not infringe the trademark and knowing that plaintiff had no trade dress rights, defendant offered to acknowledge plaintiff's registered trademarks and to stop selling the complained-of glassware. (JA 174.) Even facing bad faith demands, pragmatism often prevails.

Notwithstanding defendant's offer to negotiate, several days later, plaintiff's attorney sent a one-page, incomplete settlement agreement and demanded defendant fill in "blanks" left in the agreement. (JA 165, ¶ 9; JA 183.) Plaintiff's draft included new terms, demanded Zodax sign the completed agreement and return it by e-mail the next day. Otherwise, plaintiff would sue immediately. (JA 165, ¶ 9; JA 183.)

Defendant sent a revised settlement agreement the next day. The revision included defendant's acknowledgement of plaintiff's registered trademarks, defendant's promise to stop buying the accused products from the third party manufacturer and mutual releases. Defendant also proposed four months to dispose of about 2,000 units in inventory. (JA 166, ¶ 11; JA 181.)

### 6. Plaintiff sued despite knowing its trademark and trade dress claims lacked any merit.

Instead of answering defendant's settlement counteroffer, plaintiff responded by suing on April 16, 2014. (JA 19-54.) About three weeks later, plaintiff wrote the court requesting permission to move for a preliminary injunction. (JA 55-57.) The court approved the filing but noted, "[I]f plaintiff had in fact known of the infringement for 21 months and has not previously taken action, the Court is unlikely to find irreparable harm." (JA 60.) Plaintiff did not file its motion.

Still hoping to avoid full-scale, coast-to-coast, intellectual property litigation, on April 18, 2014, defense counsel sent plaintiff's attorney detailed rationale why plaintiff's claims were frivolous. (JA 194-196.) Then on May 28, 2014, defense counsel sent another letter explaining why plaintiff's claims were frivolous. (JA 206-223.) Attorneys often explain to their opponents the facts and law making the opponents' cases weak and the attorneys' clients' cases strong. Attorneys design these letters to foster negotiations and avoid litigation. Occasionally, the other

11

side stops pursuing to the matter. Defense counsel here went farther by reminding plaintiff's experienced intellectual property attorneys of the facts and citing case law and statutes why plaintiff's trademark and trade dress claims were frivolous and lacked any support. (JA 206-223.)

Defendant reiterated that it never used "Juliska" or any similar term as a trademark, and it labeled each glassware item and the respective packaging visibly with defendant's ZODAX trademark. (JA 207.) To support its assertion that plaintiff needed evidence of secondary meaning for its alleged trade dress but had none, defendant included pictures of plaintiff's advertisements. Defendant stressed that no plaintiff's advertisements used its product design to identify plaintiff as the source. (JA 207-217.) Instead, plaintiff's catalog admitted its so-called "Berry & Thread" design was decorative and not source identifying. ("Our prolific Berry & Thread collection embraces the historic motifs of our Bohemian glassware.") (JA 210.)

Defendant also referenced plaintiff's CEO Gooding appearing in videos in which he admitted the mark JULISKA, not the product design, identifies source. He claimed, "Each of our pieces is hand signed Juliska. This hallmark is your guarantee of its origin, authenticity and superior quality," (JA 219; JA 230), and "Our entire product line is inspired and anchored by forty authentic reproductions from fourteenth through eighteenth century Europe." (JA 217; JA 230). He also admitted that the alleged trade dress was functional when he said, "The blobs of glass,

12

known as prunts,[2] were originally applied for a practical purpose to grip with greasy hands." (JA 218; JA 230). Defendants reminded plaintiff that functional designs could not become protectable trade dress. (JA 219). *See Traffix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29 (2001).[3] *See also* 15 U.S.C. § 1125(a)(3) (trade dress claimant has burden to prove product design is not functional).

Defendant next reminded plaintiff of its heavy burden to prove secondary meaning for any product design trade dress (citing *Thompson Med. Co., Inc. v. Pfizer Inc.*, 753 F.2d 208, 217 (2d Cir. 1985) and *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 380 (2d Cir. 1997)). (JA 207-208.) Finally, defendant explained why continuing the unsupportable lawsuit would subject plaintiff to payment of defendant's attorney fees. (JA 221.)

Despite receiving defendant's positions, plaintiff proposed a settlement requiring defendant to pay plaintiff $50,000. (JA 167, ¶ 15; JA 200-202.) Its demand for money continued throughout the lawsuit. (JA 234, ¶ 7.)

On October 15, 2014, new counsel replaced plaintiff's first attorneys. (JA 3.) The next week, defendant asked court permission to file a summary judgment motion, (JA 61-63), and plaintiff asked for leave to file an amended complaint. (JA 64-67.) The court granted plaintiff's request to file an amended complaint but de-

---

[2] What plaintiff calls "berries" are "prunts," which are common in glassware.

[3] Functional works also are not copyrightable. *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 714 (2d Cir. 1992).

nied defendant's request to file for summary judgment. (JA 74-75.) The court de-
cided that a summary judgment motion four months before the close of discovery
would be premature especially with an amended complaint. (JA 75.) Defendant an-
swered the amended complaint on November 26. (JA 4.)

About two months later, plaintiff's attorney wrote the court requesting to
dismiss without prejudice. (JA 134-136.) Defendant's letter response argued that
any dismissal should be with prejudice. (JA 137-139.) Defendant's response also
explained that it had planned to move for summary judgment after the upcoming
close of discovery and to move for attorney fees following dismissal. The court
gave plaintiff until February 13 to inform the court whether it would accept dismis-
sal with prejudice. (JA 140-143.) On February 9, plaintiff dismissed with preju-
dice, (JA 144-145), and the court entered the dismissal on February 11. (JA 148-
149.)

Defendant's February 12 letter to the court requested permission to move for
attorney fees. (JA 150-152.) Plaintiff responded on February 17, (JA 153-155), and
the court held a conference on March 17. (JA 156.) The court ruled that defendant
could file its attorney fee motion, but unless it further ordered, plaintiff did not
have to respond. (JA 156.) Defendant filed its motion on March 31, (JA 7), refiled
on April 1, due to a filing error. (JA 7.) The court denied the attorney fee motion
on August 7, 2015, without plaintiff responding. (JA 10-18.)

14

On March 12, 2015, defendant filed a bill of costs. The court denied defendant its costs "because the case was dismissed pursuant to Rule 41(a)(2), which the party is not entitled to costs under Rule 54." (JA 157-158.)[4]

### 7. After asking to file a preliminary injunction motion, plaintiff did nothing to pursue its claims.

After a court denies a preliminary injunction, most plaintiffs suffering irreparable harm and believing their intellectual property cases are meritorious seek expedited discovery and early trial dates. Plaintiff here did nothing. After a short stay for mediation, plaintiff waited four months to serve its initial written discovery. (JA 233, ¶ 3.) Meanwhile, defendant still had to defend.

### 8. In two deft procedural maneuvers, just before defendant could move for summary judgment, plaintiff amended its complaint and later dismissed its complaint.

Defendant almost had two opportunities to move for summary judgement based upon plaintiff's inability to prove at least one critical element in each infringement allegation. From the outset, defendant told plaintiff it would seek summary judgement. Defendant avoided this first by a just-in-time request to amend the complaint, and later by a just-in-time dismissal.

---

[4] The quote may not be accurate because the denial was hand-written.

**9.  Based on what defendant explained to plaintiff, continued pursuit of the lawsuit was bad faith.**

Plaintiff had to know its trademark and trade dress infringement allegations were defective from the outset, and any discovery only would confirm this.

Defendant never used JULISKA as a trademark. Plaintiff first mentioned its CEO heard a representative of defendant say "Juliska-ish" in its amended complaint. (JA 88, ¶ 62.) Plaintiff should have known that the private comment was not actionable. Similarly, plaintiff had no evidence to prove secondary meaning in its various designs. Discovery on the trademark and trade dress issues could only strengthen defendant's defense.

Even before plaintiff sued, it knew it could not define its alleged trade dress to allow the public to recognize it as a trade dress. It is too complex. What could plaintiff say? "Think Juliska when you see glassware with a scalloped spiral thread design, with a "berry" shape appearing on or around the point of the scallop; curved lines of thread with "berries" on or adjacent to the thread; or a line of thread forming a circle, with a single "berry" in the center of the circle," (JA 81, ¶ 24). Plaintiff also had no evidence such as a consumer survey to support likelihood of confusion.

Plaintiff added its copyright claim when defendant said it would file a summary judgment motion. Defendant raised four primary defenses to the copyright

claim: (1) plaintiff could not prove that defendant copied, (2) defendant's glass-ware did not incorporate what plaintiff might claim to be original, (3) plaintiff's glasses were unprotectable "useful articles" and (4) plaintiff was not the "author." This brief only discusses item (1), plaintiff could not prove copying, because plaintiff dismissed before defendant could present its case about items (2) through (4).

Plaintiff did not try to prove defendant copied (access and probative similari-ty between the works), a required element to support infringement. It knew before it sued that defendant did not design the accused glassware because defendant in-formed plaintiff it bought the accused products from a third-party, foreign manu-facturer. (JA 165, ¶ 8; JA 181.) Therefore, plaintiff had to show the manufacturer's access to plaintiff's glassware, but plaintiff did not seek evidence of access. Plain-tiff and its attorneys had to appreciate that without that evidence, its copyright in-fringement claim had to fail.

### 10. Plaintiff dismissed because it knew it could not prevail, not because the stakes were too small to continue.

Plaintiff told the court on January 26, 2015, "During the course of fact dis-covery, plaintiff learned that defendant's sales of the Accused Products were low in comparison to the cost of continuing litigation." (JA 134.) This was startling be-cause plaintiff knew early that defendant's sales were small, and defendant's early disclosures confirmed this. Defendant's April 14, 2014, proposed settlement

17

agreement requested four months to sell off its small inventory of roughly 2,000 units. (JA 166, ¶ 11; JA 191.) Thus, two days before plaintiff sued, it knew defendant's remaining inventory was small. On August 2, 2014, defendant told plaintiff that the previous three years[5] sales for all accused products were less than $70,000. (JA 167, ¶ 18.) Plaintiff continued the lawsuit until February 2015 knowing potential damages were tiny.

F.  **SUMMARY OF THE ARGUMENT**

The abuse of discretion standard governs the award of attorney fees. At its core, the district court erred by focusing on minor, possibly merited elements of plaintiff's case instead of the meritless but critical elements defendant identified. Here, the district court's legal and factual errors caused an abuse of discretion. It used the wrong legal standard by holding that defendant's single use of "Juliska-ish" to plaintiff's CEO could be trademark infringement. The district court used the incorrect legal standard for determining whether plaintiff had a frivolous trade dress case after *Wal-Mart v. Samara Bros.*, 529 U.S. 205. It also used the wrong legal standard when it held that plaintiff might have had a viable copyright claim. These errors caused the district court to make factual errors by failing to find that plaintiff's suit was frivolous and in bad faith. These serious mistakes of fact and

---

[5] The statute of limitations for copyright infringement is three years. 17 U.S.C. § 507.

law caused another abuse of discretion when the court ruled that even if the case was "exceptional" under 15 U.S.C. § 1117(a), no award attorney fees was justified.

Plaintiff and its counsel had to know that plaintiff's claims were frivolous all along. They knew they could not show that the public viewed the glassware designs as a source-identifier and that defendant's purported single private use of "Juliska-ish" to plaintiff's CEO was not trademark infringement as a matter of law. After plaintiff added its copyright claims, plaintiff knew that it could not prove copyright infringement.

G.   **ARGUMENT**

### 1.   Introduction

Plaintiff asserted three frivolous infringement claims for relief – trademark, trade dress, and copyright. Plaintiff sued for trademark infringement though it knew defendant never used the JULISKA trademark. Plaintiff included a trade dress claim for relief knowing all facts confirmed the lack of secondary meaning. It did nothing to promote the trade dress as a source identifier and its multiple, different designs were too inconsistent to define a trade dress. Plaintiff later added a copyright claim for relief, but by then defendant knew that defendant bought the accused glassware from a foreign source. Plaintiff did nothing to try proving that the manufacturer copied. Defendant had to know it had no evidence and could obtain

none for at least one critical element of each claim. The lack of merit of critical elements rendered plaintiff's position frivolous.

The district court's denial of attorney fees based on reliance on plaintiff's allegations in the complaint was itself an abuse of discretion because the complaint contained the frivolous and objectively unreasonable allegations.

Each claim was frivolous and objectively unreasonable and calls for an award of attorney fees. For the Lanham Act trademark and trade dress infringement claims, the "exceptional case" standard of 15 U.S.C. § 1117(a) governs. Frivolousness and objectively unreasonable standards of 17 U.S.C. § 505 control the copyright infringement claims.

**2. The abuse of discretion standard applies to all issues on appeal, but a district court abuses its discretion when it bases its ruling on an error of law or a clearly erroneous finding of fact.**

This Court reviews awards and denials of attorney fees for abuse of discretion, *Lauder v. First Unum Life Ins. Co.,* 284 F.3d 375, 379 (2d Cir. 2002), "which occurs 'when (1) the court's decision rests on an error of law (such as application of the wrong legal principle) or clearly erroneous factual finding …." *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 416 (2d Cir. 2010). *See also Stormy Clime Ltd. v. ProGroup, Inc.*, 809 F.2d 971, 974 (2d Cir. 1987) ("Discretion is said to be 'abused' ('exceeded' would be both a more felicitous and correct term) when the

decision reached is not within the range of decision-making authority a reviewing court determines is acceptable for a given set of facts."); *Highmark Inc. v. Allcare Health Mgmt. Sys.*, 134 S. Ct. 1744, 1747 (2014) (holding "an appellate court should review all aspects of a district court's [35 U.S.C.] § 285 determination for abuse of discretion.)[6]

3.   **The district court abused its discretion by relying on unsupported allegations in the complaint or in letters to the court to counter defendant's uncontroverted evidence.**

Defendant supported its attorney fee motion with evidence including declarations and authenticated exhibits. (JA 161-246.) It showed defendant did not use JULISKA as a trademark. (JA 244.) It confirmed that plaintiff had no evidence that plaintiff's product designs identified plaintiff as the source of the goods, which meant that plaintiff lacked the legally necessary secondary meaning evidence. Finally, defendant showed that plaintiff had no evidence of "access" to support copyright infringement because defendant purchased the accused glassware from a foreign source that sells to all interested buyers, and plaintiff had no evidence that the foreign source had access to plaintiff's glassware.

---

[6] Section 285 and 15 U.S.C. § 1117(a) provide a prevailing party with recovery of its attorney fees in "exceptional" cases. Defendant relies on the "exceptional" case standard in section 1117(a) as authority for awarding attorney fees.

21

For the trademark claims, the district court relied on plaintiff's allegations in the amended complaint that a representative of defendant said the word "Juliska-ish" to plaintiff's CEO. (JA 88, ¶62.) Relying on the complaint, the very pleading that caused the case to be exceptional, was improper. The court cited no evidence of infringing trademark use because plaintiff submitted none. On the trade dress issue, the district court recognized that it lacked "a fully developed record." (JA 14.) Defendant tried to develop the record by requesting to file a summary judgment motion months before defendant dismissed, (JA 61-63), but the district court ordered defendant to wait. (JA 74-75.) Although defendant submitted admissible evidence for its attorney fees motion, the court denied the motion before plaintiff had to submit contrary evidence. Therefore, the court relied on plaintiff's unsubstantiated allegations in the complaint and in plaintiff's letter to the court opposing defendant's right to move for attorney fees.

The district court missed the point for plaintiff's copyright claim. Defendant explained that plaintiff had not and could not establish a critical element of its case—plaintiff's supplier's access to plaintiff's glassware. Defendant also advanced copyright invalidity because plaintiff's glasses are unprotectable useful articles. *See* 17 U.S.C. § 101. The district court held that plaintiff was justified in asserting a copyright claim because the Copyright Office issued the registrations. (JA 10-18.) Even if plaintiff could fend off defendant's validity challenge or at least

22

show justification for relying on its registration, it still needed to show infringement, copying the "constituent elements of the work that are original." *Feist Pub., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *Lipton v. Nature Co.*, 71 F.3d 464, 469 (2d Cir. 1995) (holding a successful claim of copyright infringement "requires proof … the defendant infringed the plaintiff's copyright by copying protected elements of the plaintiff's work.").

Plaintiff knew defendant did not copy because defendant neither designed nor manufactured its glassware. Instead, defendant bought the accused glassware from a foreign company's ordinary inventory. (JA 181.) Plaintiff admitted it knew this. Proving infringement requires evidence of the manufacturer's access, but plaintiff had no evidence and did not try to obtain evidence that the manufacturer copied. Without evidence that the foreign manufacturer likely saw plaintiff's glassware, plaintiff could not carry its burden of proof. "Access must be more than a bare possibility and may not be inferred through speculation or conjecture." *Gaste v. Kaiserman*, 863 F.2d 1061, 1066 (2d Cir. 1988). *See also Ferguson v. NBC*, 584 F.2d 111, 113 (5th Cir. 1978) (rejecting plaintiff's claim of access because "a finding of access … would be based on speculation or conjecture, and this is impermissible. To support a finding of access there must be a reasonable possibility of access not a bare possibility…." (citations omitted)).

**4.** **The district court had the right to award defendant its reasonable attorney fees under the Lanham Act and Copyright Act claims.**

    a.    The district court abused its discretion by basing its decision against awarding fees on clearly erroneous fact finding and mistakes of law.

The district court abused its discretion in finding the lawsuit was not exceptional under 15 U.S.C. § 1117(a) and did not warrant attorney fees under the Copyright Act. The district court also held:

> In fact, even if the Court were to find that Plaintiff's claim was exceptional, the Court would exercise its discretion and decline to award attorneys' fees, *see Mister Softee* [*of Brooklyn, Inc. v. Boula Vending, Inc.*], [No. 11-1055-cv, 484 F. App'x [623], 624, [2012 U.S. App. LEXIS 11834, 2012 WL 2095144 (2d Cir. 2012)] given that the decision to voluntarily dismiss with prejudice was made prior to the summary judgment stage.

(JA 10-18.) *Mister Softee* differs because the district court there did not base its decision against awarding attorney fees on clearly erroneous factual findings. *Mister Softee*, 484 F. App'x at 625. The district court's findings here were clearly erroneous and based on mistakes of law, the keys to abuse of discretion.

Plaintiff's voluntary dismissal before the summary judgment stage has no effect. *See Colombrito v. Kelly,* 764 F.2d 122, 134 (2d Cir. 1985) (holding that awarding attorney fees after a voluntarily dismissal with prejudice is inappropriate if "independent statutory authority" exists). Here, 15 U.S.C. § 1117(a) and 17

U.S.C. § 505 are the authorities. Allowing a plaintiff to escape attorney fees for a frivolous suit by dismissing just before the summary judgment stage or trial encourages bullies to file frivolous suits against competitors. The parties likely would not be here had plaintiff dismissed promptly after trying and failing to gather some supporting evidence.

b.  An "exceptional case" standard applies to attorney fee awards under plaintiff's Lanham Act trademark and trade dress infringement claims.

The district court correctly held a prevailing party can recover its attorney fees in "exceptional" cases. (JA 10-18) (citing 15 U.S.C. § 1117(a)), and defendant was the prevailing party. (JA 10-18.) *See also Carter v. Inc. Vill. of Ocean Beach*, 759 F.3d 159, 165-66 (2d Cir. 2014) (holding defendant the prevailing party following plaintiff's dismissal with prejudice of some claims coupled with defendant's successful summary judgment motion on other claims). The district court erred as a matter of law, however, when it failed to apply the correct "exceptional case" standard.

c.  The Supreme Court's *Octane Fitness* case interpreting "exceptional case" to patent litigation applies to the Lanham Act claims.

The Supreme Court defined "exceptional case" in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014). "[A]n 'exceptional' case is

25

simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id*. at 1756. Though *Octane Fitness* was a patent case, the Lanham and Patent Acts have the same attorney fee provisions. *See* 15 U.S.C. § 1117(a) and 35 U.S.C. § 285.

Courts of appeal have held *Octane Fitness* applies to Lanham Act suits. *See Georgia-Pacific Consumer Prods. LP v. Von Drehle Corp.,* 781 F.3d 710, 721 (4th Cir. 2014) ("[W]e conclude that there is no reason not to apply the *Octane Fitness* standard when considering the award of attorney fees under § 1117(a)."); *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 314-15 (3d Cir. 2014) (holding "*Octane Fitness* controls our interpretation of [§ 1117(a)].)"

Further, the Supreme Court in *Octane Fitness* approved *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest.*, 771 F.2d 521, 526 (D.C. Cir. 1985) (holding in a Lanham Act case, "Congress did not intend rigidly to limit recovery of fees by a defendant to the rare case in which a court finds that the plaintiff 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'"). *Octane Fitness*, 134 S. Ct. at 1756.

The district court incorrectly held that "the law is unsettled" whether *Octane Fitness* or older Second Circuit cases applied. (JA 10-18.) Holding the case was

26

not exceptional under both analyses, was the district court's pertinent error leading to its abuse of discretion.

      d.   *Octane Fitness* eases the standard for awarding attorney fees such that a case is exceptional for plaintiff's subjective bad faith or for exceptionally meritless claims.

"[A] case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *Octane Fitness*, 134 S. Ct. at 1757. "Something less than 'bad faith,' we believe, suffices to mark a case as 'exceptional.'" *Id*. (quoting *Noxell*, 771 F.2d at 526).

*Octane Fitness* lowered the standard for awarding attorney fees. *See, e.g.*, 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:99 (4th Ed. 2015) ("*McCarthy*") (holding the case makes "it easier for a prevailing defendant to recover attorney fees and retain them on appeal."); *Cross Commerce Media, Inc. v. Collective, Inc.*, No. 13 Civ. 2754 (KBF), 2014 U.S. Dist. LEXIS 177176, at *7, 2014 WL 7323419 (S.D.N.Y. Dec. 16, 2014) (holding *Octane Fitness* standard is "lower than that discussed in previous cases in this district with regard to the Lanham Act.").

Even before *Octane Fitness*, courts in this circuit held cases "exceptional" without evidence of bad faith. *See e.g.*, *IMAF, S.P.A. v. J.C. Penney Co.*, 810

F. Supp. 96, 100 (S.D.N.Y. 1992) (defendant awarded attorney fees where claims "utterly lacked a solid legal foundation"); *Diamond Supply Co. v. Prudential Paper Prods. Co.*, 589 F. Supp. 470, 476 (S.D.N.Y. 1984) (attorney fees proper where claim was "patently baseless"); *Viola Sportswear v. Mimum*, 574 F. Supp. 619, 620-621 (E.D.N.Y. 1983) (awarding defendant its attorney fees because, "[I]t was clear beyond cavil, if it had not been before, that the plaintiff's claim was without any basis in fact," and "The protestations by the moving defendants that the action was baseless was ignored. The juggernaut of litigation was launched and would not be deterred." Also holding proof of bad faith unnecessary).

Courts also infer bad faith where plaintiff's claims have no support. *See Mennen Co. v. Gillette Co.*, 565 F. Supp. 648, 657 (S.D.N.Y. 1983), *aff'd without opinion*, 743 F.2d 1437 (2d Cir. 1984) (attorney fees awarded because of "inference that this suit was initiated as a competitive ploy. As such it carries necessary damage to the defendant when plaintiff's claims are found, as they are here, to have no real substance."); *Contractual Obligation Prods., L.L.C. v. AMC Networks, Inc.*, 546 F. Supp. 2d 120, 129 (S.D.N.Y. 2008) (where plaintiff had no evidence supporting at least one element of its claim, "[P]ursuit of a legal theory that plaintiff either knew or should have known was untenable implies bad faith warranting an award of fees under the Lanham Act."). In addition, inferring bad faith is proper when plaintiff has no infringement evidence but "continu[es] to assert in-

fringement in court….” *Eltech Sys. Corp. v. PPG Indus., Inc.*, 903 F.2d 805, 811 (Fed. Cir. 1990) (pre-*Octane Fitness* patent case).

**5.**     **Under the *Octane Fitness* or older standards, the district court abused its discretion through errors of law and clearly erroneous factual findings when it held defendant's prevailing on plaintiff's Lanham Act and Copyright Act claims warranted no attorney fee award.**

    a.     The district court abused its discretion when it held that plaintiff's trademark claim for relief had merit based only on one private comment using "Juliska-ish" to plaintiff's CEO.

After knowing about defendant at least since a 2012 trade show, JA 47, and after full discovery, plaintiff could assert only one act claiming to be trademark infringement—a representative of defendant told plaintiff's CEO privately that defendant's products were "Juliska-ish." Plaintiff first made this allegation in its November 2014 amended complaint. (JA 88, ¶ 62.) Though defendant's advertising is public, and its products are available in stores, plaintiff found no trademark use of JULISKA or any similar word.

Plaintiffs sue for trademark infringement because others' use of their mark causes damage. Plaintiff's discovery here of the extent of defendant's use was a

waste of time because plaintiff had no evidence of the threshold issue, defendant's using the JULISKA mark.

The added claim based on one comment to plaintiff's CEO also does not support trademark infringement. Trademark infringement only arises from "likelihood of confusion as to the source of the goods in question." *Cliffs Notes, Inc. v. Bantam Doubleday Dell Publ'g Grp., Inc.*, 886 F.2d 490, 495 (2d Cir. 1989) (quotation marks omitted). Plaintiff's CEO, the only person who allegedly heard the statement, was not confused. The "ish" suffix tells listeners that defendant's product is "like" Juliska's products and someone other than plaintiff is the product's source. Similarly, saying, "Our perfume is Chanel-ish," "Our soft drink is like Pepsi," or "Our TVs have "Sony's features" causes no likelihood of confusion as to source.

Plaintiff's inaction on trademark infringement and its late-stage change from claiming defendant infringed a logo to the "Juliska-ish" allegation is additional evidence of frivolousness. For the lawsuit's first seven months until plaintiff amended the complaint, plaintiff only alleged defendant's infringement of its trademark registration, which covered only a logo with the "Juliska" name (see page 7 of this brief). The registration is specific to "serving platters," not glassware. (JA 46.) Before plaintiff sued, defendant asked for plaintiff's evidence of trademark infringement claim. Except for the one "Juliska-ish" statement, which plaintiff first men-

tioned seven months after suing, plaintiff had nothing and did not try to find anything more.

Plaintiff's position that "Juliska-ish" supports trademark infringement is frivolous, but the district court held, "Whether or not this incident by itself would suffice to impose liability for trademark infringement on Defendant, the Court finds that it at least suggests that Plaintiff's trademark infringement claim was something more than a fishing expedition or 'shakedown.'" (JA 10-18.) That finding is an abuse of discretion because it "rests on an error of law" and is a "clearly erroneous factual finding" *McDaniel*, 595 F.3d at 416. It is an error of law because any use of "Juliska-ish" is not an infringement, and it is clearly erroneous because no evidence hints that defendant's purported single, private use could cause any public confusion.

     b.     The district court abused its discretion when it ruled that plaintiff's trade dress claims were reasonable and not frivolous.

Citing *Wal-Mart*, 529 U.S. at 212, the district court acknowledged that plaintiff had to prove secondary meaning to succeed on its trade dress claims. (JA 10-18.) The court then erroneously found plaintiff could show secondary meaning.[7]

---

[7] Plaintiff had the burden to prove it acquired secondary meaning before defendant began its use. *Rockland Exposition, Inc. v. All. of Auto. Serv. Providers*, 894 F. Supp. 2d 288, 316 (S.D.N.Y. 2012) (dealing with descriptive trademark, not trade dress) (citing *PaperCutter, Inc. v. Fay's Drug Co.*, 900 F.2d 558, 564 (2d Cir. 1990). Plaintiff produced nothing showing its glassware ever acquired secondary meaning.

### i. No facts could support the necessary secondary meaning for plaintiff's product designs

The Supreme Court in *Wal-Mart* recognized, "[P]roduct design almost invariably serves purposes other than source identification." *Id.* at 213. "[E]ven the most unusual of product designs … is intended not to identify the source, but to render the product itself more useful or more appealing." *Id.* Plaintiff had to know its glassware lines could not serve as trade dress because consumers look at them for aesthetic reasons.

Plaintiff had to establish that its glassware is not functional because the Lanham Act "imposes a presumption of functionality." *Secalt S.A. v. Wuxi Shenxi Constr. Mach. Co.*, 668 F.3d 677, 683 (9th Cir. 2012) (relying on 15 U.S.C. § 1125(a)(3)).[8] Designs can be functional aesthetically and utilitarian. *See Traffix*, 532 U.S. at 33 (holding "[A] feature is also functional when it is essential to the use or purpose of the device or when it affects the cost or quality of the device.)

Plaintiff's advertising touts functionality through phrases such as:

- "Carefully designed to please the polished palate of the wine connoisseur," (JA 225.)

---

[8] Added by Trademark Amendments Act of 1999, § 5, Pub. L. 106-43 (August 5, 1999).

- "Mouth-blown in the hills outside Prague by Juliska master crafts-men, our signature Bohemian glasses are dazzling little works of art." 9JA 227.)

During a two-part YouTube video, plaintiff's CEO David Gooding said:

- "Many of these items can be seen in glass museums around the world or in grand old Renaissance paintings. It's from these historic originals that we find our new design inspiration to create new inter-pretations for today's consumer." (JA 217; JA 230.)

- "This 1635 Rembrandt self-portrait features our Isadora glass. His-torically, it was a communal drinking vessel passed around the table, where everyone drank a level between the threads." (JA 217; JA 230.)

- Juliska's products are "inspired by six centuries of European de-sign." (JA 217; JA 230.)

- "At the core of all Juliska collections, you can find historic designs." (JA 217; JA 230.)

- "Our entire product line is inspired and anchored by forty authentic reproductions from fourteenth through eighteenth century Europe." (JA 217; JA 230.)

- "Fiorella, our bestselling stemware, is based on a sixteenth century, Italian design. (JA 218; JA 230.)

"Advertising that promotes only the utilitarian advantages of a design is little if any evidence of its secondary meaning." 2 *McCarthy* § 15:52.

> Advertising that touts a product feature for its desirable qualities and not primarily as a way to distinguish the producer's brand is not only not evidence that the feature has acquired secondary meaning, it directly undermines such a finding. It supports instead the inference that consumers consider the claimed trade dress a desirable feature of the product and not primarily a signifier of source.

*Thomas & Betts Corp. v. Panduit Corp.*, 65 F.3d 654, 662 (7th Cir. 1995) *later proceedings*, 138 F.3d 277 (7th Cir. 1998). Functionality can be implicit by show-ing the design and lauding the product's advantages, *Disc Golf Ass'n Inc. v. Champion Discs, Inc.*, 158 F.3d 1002, 1009 (9th Cir. 1998), which is what plaintiff did.

Plaintiff also admitted that the designs were functional for their utility. "The blobs of glass, known as prunts, were originally applied for a practical purpose to grip with greasy hands." (JA 217; JA 230.) The "threads" also help gripping the glass. Drinkers' hands have not changed over the centuries, and prunts on plain-tiff's glassware continues its same utilitarian function.

When plaintiff sued in April 2014, the 13-years old *Traffix* case, 532 U.S. 23, firmly established the law on functionality, including plaintiff's burden to prove its glassware was not functional. Even if plaintiff's attorneys did not know

34

about Mr. Gooding's admissions, they learned about them from defense counsel's 18-page letter about six weeks after plaintiff sued. (JA 206-223.) To sue and then continue litigating in the face of a perfect defense makes the trade dress claim exceptional.

Mr. Gooding's "reproduction" admissions also are fatal to establishing secondary meaning. *L. & J.G. Stickley, Inc. v. Canal Dover Furniture Co.*, 79 F.3d 258 (2d Cir. 1996). In *Stickley*, L. & J.G. Stickley ("Stickley Co.") sold reproductions of furniture designed by Gustav Stickley. *Id.* at 260. Stickley Co. sold the furniture until the 1920s when the furniture became less popular, but it introduced the furniture again in the late 1980s. *Id.* After Stickley Co. learned that defendant Canal Dover also was selling reproductions of Gustav Stickley's designs, it sued for trade dress infringement. Reversing the district court's preliminary injunction, this Court held:

> [T]he district court failed to acknowledge the significant impact on a secondary meaning analysis which occurs where the party seeking Lanham Act protection has resumed manufacture of a product of historical significance, which it had discontinued for many years, until public interest in the original product revived. [Stickley Co.] did not simply resume use of an abandoned trade dress long since forgotten by the public. Rather, Gustav Stickley's original pieces have captured the public's imagination, earning a place in museums and history books, and commanding high bids at auctions. Though [Stickley Co.] used the same designs and craftsmanship in developing its Mission Collection that Gustav Stickley did in creating the originals, the [Stickley Co.] reproductions are not the same product as the originals.

35

*Id.* at 264. Likewise, both parties in *EFS Mktg., Inc. v. Russ Berrie & Co.*, 76 F.3d 487 (2d Cir. 1996), marketed "troll dolls, those ugly but somehow endearing creatures of mythical origin." *Id.* at 489. Finding that the parties' dolls were similar because both followed a Danish woodcarver's design from over 40 years earlier, *id.*, the court affirmed the district court's denial of plaintiff's claim. *Id.* at 491.

### ii. The district court erred by considering irrelevant statements in the amended complaint as supporting secondary meaning.

Proof of secondary meaning "occurs when, 'in the minds of the public, the primary significance of a [mark] is to identify the source of the product rather than the product itself.'" *Wal-Mart*, 529 U.S. at 211, *quoting Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851, n. 11 (1982). *See also Sports Traveler v. Advance Magazine Pub'l*, 25 F. Supp. 2d 154, 164 (S.D.N.Y. 1998) (holding a product's appearance acquires secondary meaning as trade dress only "when a consumer immediately associates the dress of the product with its source."). Plaintiffs face a "heavy burden" to prove secondary meaning for their trade dress, *Atlantis Silverworks v. 7th Sense*, No. 96 Civ. 4058, 1997 U.S. Dist. LEXIS 3158, at *11, 1997 WL 128403 (S.D.N.Y. Mar. 19, 1997), entailing "vigorous evidentiary requirements." *Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162, 168 (2d Cir. 1991).

"[I]f a manufacturer wishes to retain Lanham Act protection for a product feature, it bears the burden of insuring that consumers view the feature in predominantly source-identifying terms." *Fabrication Enters. v. Hygenic Corp.*, 64 F.3d 53, 61 n. 9 (2d Cir. 1995). Plaintiff had no direct or indirect evidence how consumers view the glassware's features, but it had to have known that all facts including the contents of its advertising pointed away from source identification and toward expressing functional features.

The district court erroneously held:

> Specifically, Plaintiff has referenced "scores of unsolicited magazine articles and press features, all prominently featuring [Plaintiff's] distinctive berry and thread trade dress," as well as "voluminous social media posts" invoking the trade dress, including, for example, the use by consumers of a "#BerryandThread" "hashtag." (Doc. No. 73 at 3; FAC ¶ 7.) Furthermore, while Defendant notes that Plaintiff's alleged trade dress encompasses multiple related designs, "there is no question that trade dress may protect the 'overall look' of a product." *Landscape Forms* …; *see also Yurman* … ("A plaintiff … may seek trade dress protection for an entire product line, by establishing that the 'overall look' in each separate product is consistent." (citation and internal quotation marks omitted)). The Court simply cannot say, as a matter of law, that Plaintiff's assertions that its trade dress represents a consistent "overall look" are unreasonable or frivolous. Additionally, the fact that other parties have, in the past, capitulated to Plaintiff's demands to stop infringing Plaintiff's trade dress suggests that there have been attempts to plagiarize Plaintiff's product, another factor relevant to secondary meaning. Finally, although Defendant stresses the "heavy burden" faced by a trade dress infringement plaintiff with respect to evidence of secondary meaning, …Defendant has not addressed the other factors relevant to secondary meaning specifically, and it may well be that Plaintiff moved to voluntarily dismiss this action precisely when it realized that its claim, brought in good faith, could not be borne out by the evidence. Such a determination—without more—does not rise to the level of bad faith or signify an "exceptionally meritless claim."

(JA 10-18.) The district court only had plaintiff's allegations in its amended complaint about "scores of unsolicited magazine articles and press features." Without seeing the articles, the district court could not tell if they equated the glassware at issue here with plaintiff as the source or even whether the articles and press features showed the asserted glassware.

Articles and press features do not establish secondary meaning. *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 34 (2d Cir. 1995) (presenting articles in industry and trade publications discussing plaintiff's products without "evidence suggesting that its trade dress identified the source of the product" did not establish secondary meaning, especially without a consumer survey). Just as articles in *Car and Driver* with pictures of one vehicle brand are not evidence of secondary meaning of the vehicle's shape, articles merely showing photographs of plaintiff's products without creating an association between a design in the photograph and plaintiff as the source do not support secondary meaning.

Plaintiff's advertising its glassware's quality, not source identification, negated secondary meaning. "[A]dvertising that promotes the functional advantages of a product and does not call attention to the design alleged to be non-functional provides little if any evidence of secondary meaning." *Ergotron, Inc. v. Hergo Ergonomic Support Sys.*, No. 94 Civ. 2732 (SAS),1996 U.S. Dist. LEXIS 3822, *21, 1996 WL 143903 (S.D.N.Y. Mar. 26, 1996). Far from equating a design with

plaintiff as the source, one advertisement states, "Carefully designed to please the polished palate of the wine connoisseur," (JA 225), and "our signature Bohemian glasses are dazzling little works of art." (JA 227.)

The district court's reliance on "#BerryandThread" "hashtag" also is misplaced for similar reasons. It is not evidence that the social media post referred to designs plaintiff asserts are its trade dress. Although all the glassware pictured on page 8 has at least one berry and one thread, plaintiff's definition of its three trade dress designs (1) spiral thread design with a berry shape at or near the end of the thread; (2) curved threads with berries on or adjacent the thread; and (3) circular thread with a berry in the center of the circle, does not apply to all plaintiff's designs. Glass A does not have "threads (plural), and goblet B has no berry. Pitcher C, which could only fall in definition (1), does not conform to the definition because it does not have *one* berry and *one* spiraled thread. No evidence could show how the public grasped some designs with threads and berries to identify plaintiff while other designs did not.

Plaintiff also refers to plates and other tableware as "Berry and Thread." (JA 128-129.) Nothing suggests that a person referring to "Berry and Thread" does so to identify plaintiff as the source of glassware, especially the particular glassware asserted against defendant.

### iii. Plaintiff's glassware designs are too inconsistent and too complex to identify plaintiff as the source.

With the wide variety of designs on plaintiff's glassware, consumers know that plaintiff's "threads" and "berries" decorate the glasses; they do not identify plaintiff as the source. Four cases from this Court rejected trade dress rights on groups of products.

Plaintiff in the earliest, *Jeffrey Milstein*, claimed trade dress rights to a series of greeting cards. 58 F.3d at 30. Plaintiff defined its trade dress as "straight-on, strong photographic, glossy images of animals, persons or objects on die cut cards that are cut without bleed of any kind." *Id.* at 33. Rejecting plaintiff's claim, the court held, "[O]verextension of trade dress protection can undermine restrictions in copyright and patent law that are designed to avoid monopolization of products and ideas." *Id.* at 32. "[J]ust as copyright law does not protect ideas but only their concrete expression, neither does trade dress law protect an idea, a concept, or a generalized type of appearance." *Id.* Plaintiff here tried protecting an idea, glassware with one or more threads and one or more berries in three, specific configurations.

The next case, *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996 (2d Cir. 1995), involved sweater designs. The court held that "the primary purpose of Knitwaves' sweater designs is aesthetic rather than source-identifying." *Id.* at 1006. This deci-

40

sion predates the change in 15 U.S.C. § 1125(a)(3), which shifted the burden to plaintiffs to prove the trade dress non-functional.

Plaintiff in the next case, *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373 (2d Cir. 1997), claimed trade dress in a line of outdoor furniture including:

> [T]wo different outdoor trash cans, two benches without back support, and six benches with backs. Of the benches in this last group, three stand on two legs, while three stand on two front legs and a pair of adjacent hind legs. All of the products, with the exception of one of the two trash cans, use curved steel pipe for support. The seating surfaces of the benches are wooden slats, steel rods, or curved, perforated metal sheets.

*Id*. at 375. In rejecting trade dress protection for the furniture line, the court explained, "[A] trade dress plaintiff seeking to protect a series or line of products faces the particularly difficult challenge of showing that the appearance of its several products is sufficiently distinct and unique to merit protection as a recognizable trade dress." *Id.* at 380. "[A] claim of trade dress covering an array of items is likely to be broader than one for an individual product's design. Accordingly, when protection is sought for an entire line of products, our concern for protecting competition is acute." *Id.*

Defining its trade dress with phrases such as "bold tubes … that comes up from the ground and kind of flows around the back," "different materials that can be placed in that support to sit on, that have kind of a floating feel," "a lot of

41

curves and soft corners," "a lot of structural heft," "it seems to float," *id.* at 381, ruined plaintiff's trade dress claims. The court also noted plaintiff's trade dress definition applied only to some of its ten items without a uniting feature. *Id.* at 382.

Plaintiff here has the same problems. Its berries and threads are arranged differently among the glassware with nothing uniting the designs. Plaintiff also does not assert that all designs with berries and threads encompass the trade dress.

Unlike the first three cases, *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101 (2d Cir. 2001), is post-*Wal-Mart*. Plaintiff Yurman was famous for its lines of twisted cable jewelry. *Id.* at 107. The court reiterated the general rule, "Product design is driven primarily by the usefulness or aesthetic appeal of the object; trade dress protection for product design therefore entails a greater risk of impinging on ideas as compared with protection of packaging or labeling." *Id.* at 116. Trade dress protection for an entire product line, requires "the 'overall look' in each separate product is 'consistent.'" *Id.*

Yurman's definition of its trade dress, "the artistic combination of cable [jewelry] with other elements," *id.* at 117, hurt. "Yurman's inability to articulate its trade dress at a lower level of generality is not altogether surprising, given (1) that there are 18 different Yurman pieces in the product line it seeks to protect (eight rings, seven bracelets, and three pairs of earrings)." *Id.* at 118. The court also held against Yurman because it conceded its "pieces are composed exclusively of ele-

ments commonly used in the jewelry industry." *Id.* Plaintiff here also acknowledged, "At the core of all Juliska collections, you can find historic designs." (JA 217; JA 230.)

Applying these four cases to plaintiff's trade dress claims demonstrates plaintiff's claims are and always were meritless. Plaintiff in *Jeffrey Milstein* could not protect the idea of its greeting card design instead of a particular design, but plaintiff here also seeks protection of multiple designs using the idea of combining "berries" and" threads." The sweater designs in *Kintwaves* were "aesthetic rather than source-identifying." Here, plaintiff's CEO admitted its glassware "are dazzling little works of art." (JA 227.) Plaintiff in *Landscape Forms* tried to assert trade dress in dissimilar outdoor products, and other products it sold varied from the claimed trade dress. Plaintiff here also claims a trade dress for diverse glassware designs, but it does not claim rights in all designs it sells including some with threads and berries.

The district court's reliance on *Landscape Forms* and *Yurman* missed their essence. Yes, *Landscape Forms* held that "trade dress may protect the 'overall look' of a product." However, bent, three-inch pipe was the only common feature, but it "alone cannot support Landscape's broad claim for trade dress protection." *Landscape Forms*, 113 F.3d at 382. Some of plaintiff's furniture also lacked the claimed trade dress. *Id.* Therefore, the design could not identify source. Here,

43

plaintiff's asserted trade dress suffers the same shortcomings. The threads and berries in its designs vary between its glassware, other glassware with berries and threads are not part of the trade dress, and berries and threads have been glassware features for centuries.

Before plaintiff sued, it had to know its alleged trade dress is too complex for the public to equate the designs as source identifiers. What could plaintiff say? "Look for glassware with approximately three unique, distinctive patterns including '(i) a scalloped spiral thread design, with a 'berry' shape appearing on or around the point of the scallop' or two other patterns." (JA 76). Plaintiff's definition did not meet the required "lower level of generality." *Yurman*, 262 F.3d at 118.

### iv. Defendant's prominent display of its ZODAX trademark negates public confusion.

Defendant conspicuously displays its ZODAX trademark on its products and packaging including the accused glassware just as plaintiff displays its JULISKA mark on its glassware. (JA 207.) When an accused trade dress infringer displays its own mark on its products, public confusion usually cannot occur. *See Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1045-46 (2d Cir. 1992) ("The prominence of the trade names on the two packages weighs heavily against a finding of consumer confusion resulting from the overall look of the packaging.").

44

### v. The district court findings why plaintiff dismissed was clearly erroneous.

The district court held plaintiff "voluntarily dismiss[ed] this action precisely when it realized that its claim, brought in good faith, could not be borne out by the evidence." No evidence supports that holding, and the evidence is contrary. Plaintiff's trademark claim was frivolous from the start. Any infringement of the JULISKA trademark would be public in defendant's advertising or on its packaging. Because both companies attended trade shows, plaintiff could have looked at defendant's booth to see whether defendant used JULISKA. Unless plaintiff saw defendant using JULISKA, it had no basis to sue or to drag the case onward for ten months. True, in some trademark cases, plaintiff needs time to develop evidence for the likelihood of confusion factors such as actual confusion and buyers' sophistication. *See Polaroid Corp. v. Polarad Elec. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961) (this Court's likelihood of confusion test). To reach the *Polaroid* factors, a plaintiff first must prove defendant uses the mark (or a confusingly similar mark). Without knowledge of defendant's use, plaintiff could not sue in good faith.

The district court was clearly erroneous when it held that plaintiff sued in good faith and dismissed only when it learned the evidence went against it. Before plaintiff sued, any evidence of secondary meaning would have been in its own advertising, webpages and other documents. Cases from this Court had to warn plain-

tiff it could not establish secondary meaning. Its own advertisements lauded the glassware's functionality. Its CEO admitted that the glassware was "anchored by forty authentic reproductions" over the last 500 years. It also knew that its alleged trade dress was inconsistent among its designs and that some glassware with berries and threads did not use the trade dress. It did not need ten months of litigation to discover it had no trade dress rights. Because plaintiff had to know that it could not establish infringement or protectable trade dress, its claims were "subjective bad faith" and "exceptionally meritless." Thus, this case is exceptional.

> c. Because plaintiff's copyright claim was predicated on an unsubstantiated allegation of copying, the district court abused its discretion in denying defenant attorneys' fees on the copyright claims.

Successful copyright infringement claims require proof of copying, *Feist*, 499 U.S. at 361; *Castle Rock Entm't v. Carol Publ'g Grp.*, 150 F.3d 132, 137 (2d Cir. 1998) ("There are two main components of this prima facie case of infringement: a plaintiff must first show that his work was actually copied . . . . [and] then must show that the copying amounts to an improper or unlawful appropriation.") (internal quotation marks and citation omitted). Plaintiff did not try to find evidence of copying. Its failure on this critical element made its copyright infringe-

ment claim frivolous. Holding otherwise was an abuse of discretion. In copyright cases:

> When determining whether to award attorneys fees, district courts may consider such factors as (1) the frivolousness of the non-prevailing party's claims or defenses; (2) the party's motivation; (3) whether the claims or defenses were objectively unreasonable; and (4) compensation and deterrence. *See Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 … (1994). The third factor—objective unreasonableness—should be given substantial weight.

*Bryant v. Media Right Prods.*, 603 F.3d 135, 144 (2d Cir. 2010). "Copying may be established either by direct evidence of copying or by indirect evidence, including access to the copyrighted work, similarities that are probative of copying between the works, and expert testimony." *Laureyssens v. Idea Grp., Inc*., 964 F.2d 131, 140 (2d Cir. 1992). No direct evidence of copying exists here.

Defendant explained to plaintiff it could not have copied because it bought the accused glassware from a foreign manufacturer. (JA 180.) With that knowledge, plaintiff knew it had to show the manufacturer's access either through the manufacturer's admission or by showing the manufacturer's access to plaintiff's glassware and "similarities that are probative of copying between the works," *Id.* Plaintiff made no attempt to prove the manufacturer's access.

"Access must be more than a bare possibility and may not be inferred through speculation or conjecture." *Gaste*, 863 F.2d at 1066. Defendant showed plaintiff facts negating access, without which its copyright claim could not succeed, but plaintiff did not try to establish access. Pursuing an unwinnable copyright

infringement claim is "objectively unreasonable," which supports an award of attorney fees to defendant. *Bryant*, 603 F.3d at 144.

Plaintiff's motivation, another *Bryant* factor, also supports awarding attorney fees. Before plaintiff added its copyright claim, it knew its initial trademark and trade dress claims were objectively unreasonable. Yet, it continued pursuing the frivolous claims. Further, plaintiff had no evidence to oppose defendant's already-announced summary judgment motion. Therefore, plaintiff used a ploy to prevent an immediate, inglorious end to the lawsuit. A new copyright claim would make the litigation more expensive for defendant and might force capitulation.

> [T]he copyright claim was not brought because of its inherent merit but because of its value in settlement negotiations. It was another chip, belatedly introduced to strengthen [plaintiff's] bargaining position. And a party that knowingly gambles on an unreasonable legal theory in order to achieve a secondary gain—in this case, the leveraging of a settlement—is indeed improperly motivated.

*Torah Soft Ltd. v. Drosnin*, No. 00 Civ. 5650 (JCF), 2001 U.S. Dist. LEXIS 19217, at *15, 2001 WL 1506013 (S.D.N.Y. Nov. 27, 2001) (awarding attorney fees).

### 6. Plaintiff and its counsel had to know that its claims were baseless and brought in bad faith.

Intellectual property practitioners in New York, such as the two firms representing plaintiff, (JA 1), know this brief's explanations of trademark, trade dress and copyright law. Almost all authority on which defendant relies is from this Court or from district courts in this circuit, authority known to plaintiff's attorneys.

48

Further, at an early stage of the parties' dispute, defense counsel explained the facts and law to plaintiff's attorneys. Since then, plaintiff has not offered reasons disagreeing with defendant's assertions.

**7.  Even if only the Lanham Act claims justify awarding attorney fees, plaintiff's copyright claim is so intertwined with the other claims that the fee award should apply to all defendant's attorney fees.**

Plaintiff's three infringement claims arise from the same glassware and defendant's same alleged acts. These three claims are so closely intertwined that an attorney fee award on one claim for relief should apply to the others, too. When a lawsuit has multiple claims, and one claim has no fee-shifting provision, courts award attorney fees for the entire case if the claims have related factual and legal issues. *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) (civil rights case). The Court noted:

> In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims.

*Id.* In the intellectual property context, "[A] party entitled to attorney's fees as a prevailing party on a particular claim, but not on other claims in the same lawsuit, can only recover attorney's fees incurred in defending against that one claim or any

49

"related claims." *Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.,* 122 F.3d 1211, 1230 (9th Cir. 1997) (citing *Hensley*, 461 U.S. 434-35).

Here, the facts and legal issues relating to the trade dress and copyright claims are related. Useful articles like glassware are not copyrightable. 17 U.S.C. § 101. Trade dress functionality under 15 U.S.C. § 1125(a)(3) is related. Any copyright protection can "embrac[e] no more than the author's original expression…." *Hoehling v. Universal City Studios, Inc.*, 618 F.2d 972, 974 (2d Cir. 1980) (originality of historical accounts of facts in the public domain). Similarly, trade dress protection is not available for reproductions of earlier designs in the public domain. *Stickley*, 79 F.3d at 260. The facts and issues related to plaintiff's damages and injunction claims also are very similar.

An award of attorney fees for defense counsel's entire effort is proper. If this Court finds that attorney fees under the Lanham Act claims but not under the copyright claims are proper and finds that the sets of claims are insufficiently related, defendant's attorney fee motion included a detailed breakdown of the tasks so the district court could apportion the fees.

### 8. The district court improperly denied costs.

Costs normally "should be allowed to the prevailing party." FED. R. CIV. P. 54(d)(1). Defendant is the prevailing party. *Carter*, 759 F.3d at 165-66 (holding defendant the prevailing party following plaintiff's dismissal with prejudice). Be-

cause the rule "allows costs 'as of course,' such an award against the losing party is the normal rule obtaining in civil litigation, not an exception." *Whitfield v. Scully*, 241 F.3d 264, 270 (2d Cir. 2001) Though courts can exercise discretion and deny costs, *Moore v. County of Delaware*, 586 F.3d 219, 220 (2d Cir. 2009) (costs on appeal), the district court denied costs because plaintiff dismissed with prejudice. JA _. The court's denial of costs was improper because it exercised no discretion.

## H.  CONCLUSION

Defendant showed that plaintiff's claims were frivolous. Defendant never used the JULISKA trademark, and any "Juliska-ish" oral statement directly to plaintiff's CEO is not infringing. Plaintiff's trade dress claim was frivolous because it had to know based on *Wal-Mart*, *Traffix* and Second Circuit principles its glassware designs were not protectable, its designs were too inconsistent, and plaintiff did nothing to equate the designs with itself as the source. The glassware also is functional. Finally, plaintiff had no evidence and did not seek evidence of copying.

Therefore, the court abused its discretion in failing to award attorney fees based on clearly erroneous fact finding and mistakes of law. Defendant requests this Court remand to the district court to reconsider its denial of an attorney fee award because of its abuse of discretion with instruction to consider that attorney fees are proper because plaintiff's trademark and trade dress claims made the case

"exceptional" under 15 U.S.C. § 1117(a) and because plaintiff's frivolous copy-right claims were objectively unreasonable under 17 U.S.C. § 505.

November 16, 2015

/s/ Michael Harris
Michael Harris
mharris@socalip.com
Steven C. Sereboff
ssereboff@socalip.com
M. Kala Sarvaiya
ksarvaiya@socalip.com
SoCal IP Law Group LLP
310 N. Westlake Blvd., Suite 120
Westlake Village, CA 91362-3788
Phone: (805) 230-1350 • Fax: (805) 230-1355
Attorneys for Defendant – Counter-
    Claimant – Appellant, Zodax L.P.

## I. CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1. This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because this brief contains 11,764 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

2. This brief also complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman.

November 16, 2015

/s/ Michael D. Harris
Michael D. Harris
Attorneys for Defendant – Counter-
    Claimant – Appellant, Zodax L.P.